PET. & SUM.                    Thompson *vs* Thompson.

Case 100.                    ERROR TO THE MERCER CIRCUIT.

*Variance.   Practices.    Consideration.    Emancipation*
*of slaves.*

May 6.        JUDGE BRECK delivered the opinion of the Court.

Case stated.        ELIZABETH THOMPSON, the defendant in error, brought
her action by petition, against Fleming Thompson, J. N.
Thompson, Wm. B. Moore, and D. W. Thompson, upon
a joint and several note executed by them and Anderson
Harris to the plaintiff, for $550, bearing date the 7th
March, 1837, and payable twelve months thereafter.
Process was served upon J. N. and D. W. Thompson,
and returned not found as to Fleming Thompson and
Wm. W. Moore, as to whom the suit was abated.

The defendants, J. N. and D. W. Thompson, filed
a demurrer to the petition and two pleas. The plaintiff
demurred to the pleas, the demurrer was sustained and
judgment thereon for the plaintiff, to reverse which the
defendants have brought the case before this Court.

The demurrer of the defendants will be first noticed.

The omission of A variance between the note copied in the petition and
the name of the
subscribing wit- the one of which oyer was given, is the ground relied
ness to a note at-
tempted to set it upon in support of it. The variance consists in this,
out on petition
and summons, that the name of the subscribing witness upon the note is
is not a material
variance, nor is omitted in the copy, and what may be presumed to be
the omission to abbreviations of the word *security*, appended to the names
add the abbrevia-
ted word "Secy" of J. N. Thompson and Anderson Harris, are also omit-
to the name of
one of the obli- ted in the copy. The act authorizing suit by petition, re-
gors, it is not of
substance:  (4 quires only the *substance* of the note to be copied. In
*Monroe, 527; 4*
*Bibb, 32.*) this instance nothing material or substantial was omitted
in the copy. The names of the obligors were correctly
copied—the word *security*, if attached in full, would have
constituted no part of the name of J. N. Thompson or of
Anderson Harris. There was, therefore, no variance be-
tween the names of the obligors upon the original note
and the copy. In support of this position, the case of

*Johnson* vs *Ellison*, (4 *Monroe*, 527,) may be referred to. In that case the note was payable to J. W. and assigned by J. W. *Junior* to the plaintiff, and held that *junior* constituted no part of the name of J. W. When the statute required a copy of the petition and summons to be served on the defendant, this Court decided in *Bridges* vs *Conn*, (4 *Bibb*, 32,) that a variance between the original and the copy, in immaterial parts, did not vitiate the process nor the service, but that a variance in a substantial part, as in the date of the note, would. If the omitted abbreviated word could be conceived important for defence in any way, the party could render it equally available whether copied into the petition or not. But we think it cannot be regarded as constituting any part of the note, in any way, and certainly no part of its *substance*. With even less propriety can the name of the subscribing witness be considered as forming a substantial part of it.

We are of opinion, therefore, the variance between the original note and the copy, was not material and constituted no cause of demurrer.

But it is insisted that the Court below erred in not disposing of the demurrer. As the same alledged defect, however, was reached and in effect disposed of by the demurrer of the plaintiff to the defendants' pleas, the failure directly to pass upon it, although irregular, forms no ground for disturbing the judgment, and more especially as the case upon the demurrer was for the plaintiff.

The sufficiency of the defendants' pleas will now be considered. The first one, although obscurely and inartificially drawn, is, as we understand it, in substance this: that Fleming Thompson, whose name is first upon the note in contest, was formerly the slave of Joseph Thompson, deceased, and at the date and execution of the note, *was the* slave of the plaintiff, who was the widow of said Joseph, and of his children; that the defendants executed the note as the securities of said Fleming, and upon the promise and undertaking of the plaintiff to emancipate him; that the plaintiff, with a portion of the other owners, executed an imperfect deed of emancipation of Fleming, at the April term, 1838, of the Mercer

A demurrer and pleas are filed to petition & summons, plaintiff demurs to the pleas, the sufficiency of the petition comes up on the trial of demurrer to pleas, and if the decision is right defendant cannot complain that his demurrer was not first decided on in form.

First plea.

THOMPSON
vs
THOMPSON.

Circuit Court, and had the same recorded, and that this deed formed and "constituted the reason, cause, and entire consideration of the execution by the defendants, of said note."

Second plea.

The second plea avers that the defendants, as securities of said Fleming, had executed the note to the plaintiff, in consideration that the plaintiff and a part of the other owners of Fleming, agreed to relinquish their right to him as a slave, and to emancipate him as far as they could, and license him to go abroad and trade as a free man, and that the plaintiff and a part of the other owners, in consideration of said note, had relinquished to said Fleming their right and interest in him as a slave, and executed a partial deed of emancipation and licensed him to go abroad as a free man, and that under said deed he had so gone at large and hired himself out.

The first question presented by the first plea is, whether the undertaking of plaintiff to emancipate Fleming was obligatory upon her. Upon a failure to perform it, would she be legally liable? If she had been the sole owner of the slave, we can perceive no reason why the parol promise to emancipate would not be binding.

A verbal promise to emancipate a slave is a good consideration to support a note, although promisor was only part owner of the slave to which the promise related, and not within the statute of frauds, is not immoral or illegal.

The plea does not aver that the promise was made to Fleming. The inference is that it was made to the responsible obligors upon the note. It is true that it was a promise to perform what could only be done by a written instrument, but so, before the statute of frauds, was a parol promise to convey land; yet such a promise or contract was binding, and its specific execution enforcible in a Court of Equity. It cannot be objected to a promise of emancipation, that it is immoral or illegal, and although by parol, we are not prepared to pronounce it void or invalid.

—So is a promise by one part owner, nor is it any infraction of the laws prohibiting owners of slaves from permitting them to go at large and hire themselves, by the emancipation they cease to be owners.

Does the fact that the plaintiff was, at the time, but part owner of Fleming, vary the case? It may be well questioned whether a fair construction of the plea does not limit the undertaking of the plaintiff to emancipate, to the extent merely that she and other part owners, who joined in the deed, had an interest. But conceding that the plea goes further, and that the consideration of the note was the promise of the plaintiff to effect the entire

emancipation of the slave; the fact that she was not, at the time, the sole owner, would not, we think, affect its validity. The performance of it is not shown by the plea to have been either impossible or impracticable, nor ought we to indulge in such a presumption. The plea admits the plaintiff to have been the owner, in part, of the slave and the mother of the other owners. In the absence of any intimation of concealment or fraud, it would be but a fair and charitable presumption that the whole matter was distinctly understood between the plaintiff and her children, and all the parties concerned. But whether so or not, we are of opinion that the promise to emancipate, whether in whole or in part, was valid, and it follows of course, that the defendant did not execute the note without consideration. The parties did not make the emancipation of Fleming a condition precedent to the payment of the note, nor does the plea show any failure of consideration since its execution. We come, therefore, to the conclusion that the first plea is not a bar to the plaintiffs action, and consequently, that the demurrer to it was properly sustained.

The questions arising upon the second plea are: 1st. Whether the agreement and the performance thereof by the plaintiff and a part of the other owners of the slave, Fleming, to emancipate him to the extent of their interest and ability, were illegal? It is contended that such an act is in violation of the statute, which prohibits the master or owner of a slave to license him to go at large and trade as a free man. The plea, it is true, avers that the agreement was *thus* to license the slave in this case, and that he had been so licensed and had gone at large accordingly. But when the whole plea is taken together, the license relied upon is but a consequence of the act of emancipation.

The question then is, whether part of the owners of a slave, three out of five, as appears to have been the case in this instance, can, to the extent of their title and interest, emancipate him, or would their effort, as an act of emancipation, be void and amount to a mere license, liable at any time to be recalled. Although it may be difficult to regard slavery in an individual otherwise than

A part owner of a slave may emancipate to the extent of his or her interest in the slave—it is effectual *pro tanto.*

THOMPSON
*vs*
THOMPSON.

as an entirety, yet we cannot doubt if each of several owners of a slave were to execute a separate deed of emancipation, the effect would be his entire freedom, as much so as if all had united in a single deed. Upon the same principle, as three out of five have emancipated the slave in this case, emancipation by the other two would effectually free him—it would seem then to follow, that the act of the three has, *pro tanto*, accomplished the work of freedom, and we are aware of no prohibition, express or implied, upon them from doing it, and having done it, we apprehend they have no power to recall or annul it. . They have divested themselves of all title and interest, and have ceased to be owners or masters, and cannot, therefore, be liable to the penalties of the act referred to.

A promise by one part owner of a slave to emancipate himself and procure the other part owners to do so likewise, is a valid promise, and good consideration for an obligation.

The remaining question arising upon the second plea is, whether the agreement by the plaintiff and part of the other owners of the slave in question, to emancipate him to the extent of their interest, and the actual performance thereof, constituted a valid consideration for the note in controversy? Whether the defendants would derive any benefit from such a partial emancipation, or whether it would enure to the benefit of the other two owners, or to the benefit of the slave, is not now important to determine. It is sufficient, as has already been shown, that the plaintiff and other part owners have surrendered their interest in the slave, and have divested themselves of all title. By their act three fifths of the work of entire emancipation has, in effect, been accomplished, and it is not improbable that an arrangement has been made or was contemplated, with the other part owners to complete it.

The case is one of rare occurrence, and by no means free from difficulty, but we have come to the conclusion that the demurrer to both the pleas of the defendants was properly sustained.

Wherefore, the judgment is affirmed.

*J. B. Thompson* for plaintiff: *Harlan & Craddock and Daviess* for defendants.